**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01849-PAB-KMT

Eva Pepaj, Brooke Taylor a/k/a Brooke Johnson, Jessica Golden a/k/a Jessie Golden, Rachel Bernstein a/k/a Rachel Koren, Tiffany Toth Gray a/k/a Tiffany Toth, Lina Posada, and Marketa Kazdova,

Plaintiffs,

v.

BPB, LLC d/b/a The Mansion; Colorado Springs Liquid Assets, LLC d/b/a Gasoline Alley; Cansano, LLC d/b/a Blondie's Ultra Lounge; GLDT, LLC d/b/a Gasoline Alley; WSB, LLC d/b/a Blondies, and DOES 1-10,

Defendants.

---

**PLAINTIFFS' FIRST AMENDED RESPONSE IN OPPOSITION TO ALL DEFENDANTS' MOTIONS TO DISMISS ALL CLAIMS FOR FAILING TO STATE A CLAIM**

---

Plaintiffs Eva Pepaj, Brooke Taylor a/k/a Brooke Johnson, Jessica Golden a/k/a Jessie Golden, Rachel Bernstein a/k/a Rachel Koren, Tiffany Toth Gray a/k/a Tiffany Toth, Lina Posada, and Marketa Kazdova, (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file their collective First Amended Response in Opposition to Defendant's Motion to Dismiss (Doc. 40) filed by Defendant GLDT, LLC d/b/a Gasoline Alley ("Defendant" or "Gasoline Alley") and Defendants BPB, LLC d/b/a The Mansion (hereinafter "BPB") and WSB, LLC d/b/a Blondies' Motion to Dismiss adopting and joining GLDT, LLC d/b/a Gasoline Alley's Motion to Dismiss (Doc. 41).

## I.
## SUMMARY OF ARGUMENT

1. Defendant GLDT, LLC d/b/a Gasoline Alley filed its Motion to Dismiss on October 15, 2021 (Doc. 40). Defendants BPB, LLC d/b/a The Mansion and WSB, LLC d/b/a Blondies filed a Motion to Dismiss on October 21, 2021, "adopting and joining" GLDT's Motion (Doc. 41). Plaintiffs filed their Response to GLDT's Motion to Dismiss (Doc. 42); however, out of an abundance of caution, now file this Amended Response addressing BPB and WSB's piggy-back Motion.

2. Plaintiffs are professional models who were injured by Defendant's unauthorized use of their images on their social media platforms and the Internet. Each Plaintiff establishes herself as a well- known, professional model who earns a living by promoting various brands, products, and services via her image. (Doc. 28, *First Amended Complaint*, para. 24-30, 37-43, 65, 77, 88, 99, 110, 120, 131). Each Plaintiff provides multiple credits for the use of her image in the Complaint (*Id.*) Plaintiffs bring causes of action for (1) false endorsement and (2) false advertising under the Lanham Act; (3) violation of their right to privacy on a misappropriation of likeness theory; (4) defamation; and (5) negligence in the use of their images. Plaintiffs Federal Lanham Act (15 U.S.C. § 1125(A) claims should not be dismissed because the Complaint articulates a plausible case for consumer confusion and the falsity of the advertisements at issue.

3. Plaintiffs' claims are properly plead and are timely. Plaintiffs allege in their Complaint that Defendant's use of their images was an ongoing practice that occurred over an extended period of time and that their careers as professional models were harmed as a result of the unauthorized use of their images to advertise Defendant's night clubs (*See, e.g.*, Doc. 28, para. 61-64).

4. Plaintiffs also allege that the images were republished over an extended period of time to a substantially different audience by all Defendants (Doc. 28, para. 54, 59, 60). Moreover, Plaintiffs' Complaint meets the standard required under Federal Rule of Civil Procedure 12(b)(6), the proper test at this point in the case. As such, Defendant's Motion to Dismiss must be denied.

## II.
## LEGAL STANDARDS & ARGUMENTS

### A. Pleading Requirements

5. To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir.2010); *Grim v. FEDEX Ground Package Sys., Inc.*, CV 19-10 MV/GBW, 2019 WL 2298804 (D.N.M. May 30, 2019; *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim is facially plausible where the claimant pleads sufficient factual content to permit the court to reasonably infer that a defendant is liable for the conduct alleged. Therefore, a motion to dismiss should be denied "where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim 'across the line from conceivable to plausible.'" As such, a court can only consider what is contained within the four corners of the complaint—it must

"limit its consideration to the pleadings and exhibits attached to the pleadings and, . . . accept the plaintiff's allegations as true and evaluate all plausible inferences from those facts in favor of the plaintiff." *Gulfstream Media Group, Inc. v. PD Strategic Media, Inc.*, No. 12-62056-CIV, 2013 WL 1891281, at *3 (S.D. Fla. May 6, 2013). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010).

6. Plaintiffs' First Amended Complaint is detailed, fact specific, and organized by clear headings and individual counts and all Defendants can intelligibly frame a response and defense to each count. (Doc. 28, *First Amended Complaint*). The issue is whether the live Complaint contains sufficient facts to allow Defendants to intelligibly answer, and in this case, Defendants can absolutely respond to the Complaint. The entire basis of the Complaint is evidenced by the Imagery obtained from Defendants' own media. (Doc. 28-1, *First Amended Complaint*, Exhibits A-G, *Imagery*). As such, Plaintiffs have satisfied the pleading requirement fair notice.

**B. Plaintiffs' Pleadings Meet the 12b6 Standard for Identifiability.**

7. In ruling on a Rule 12(b)(6) motion the Court must "look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F. 3d 1272, 1275 (10th Cir. 2001). Moreover, the F.R.C.P. 12(b)(6) standard if that all factual allegations from the Complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir.2010); *Grim v. FEDEX Ground Package Sys., Inc.*, CV 19-10 MV/GBW, 2019 WL 2298804 (D.N.M. May 30, 2019; *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

8. "Where a celebrity plaintiff asserts a false-endorsement claim, the 'mark' at issue is 'the celebrity's persona and the strength of the mark refers to the level of recognition the celebrity enjoys.' *Amazon Inc.*, 2000 WL 1800639, at *7 (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812, n.1 (9th Cir. 1997)). While the *Amazon, Inc*. is a case in which the plaintiff was a celebrity, the case does not stand for the proposition, nor is any requirement under *the plain meaning of the Lanham* Act that a person must be a "celebrity" in order to bring the claim. Put another way, "celebrity" status is not a standing requirement. Moreover, "celebrity" is not defined; however, in its Motion to Dismiss, these Defendants define it in terms recognizability.

9. In this matter Plaintiffs' First Amended Complaint plainly states that the Plaintiff Models "are extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services" and that their "careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands." (Doc. 28, para. 37-38).

10. Plaintiffs' Amended Complaint also states that they "are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities." (*Id*.). In addition, it alleges that "each Plaintiff Model has worked to establish herself as reliable, reputable, and professional." (Doc. 28, para. 39-42). Each Plaintiff's endorsements and major relationships are outlined in the First Amended Complaint. (*Id.* at para. 66, 78, 89, 100, 110, 120, 131). In other words, Plaintiffs have alleged that the very nature of their business revolves around their identity and recognizability and have provided specific companies, movies, commercials, and other engagements where their image was used to sell or endorse a

product. Moreover, the harm alleged in the lawsuit stems from the damage to their brand and persona as a result of being affiliated with the Defendants' clubs. Under the 12(b)(6) standard, these allegations must be taken as true. As such, Plaintiffs have properly plead allegations of publications occurring within the statute of limitations.

11. In short, Defendants have fair notice of the allegations against them, and Plaintiffs' pleadings meet the notice requirements under 12(b)(6). As such, dismissal is improper.

**C. Plaintiffs' Pleadings Establish a Claim for False Endorsement or False Advertising**

12. As stated above, the F.R.C.P. 12(b)(6) standard is that all factual allegations from the live Complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

13. The Complaint contains "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *See Twombly*, 550 U.S. at 555. It points to a lack of specific policies and procedures and articulates the duty of Defendants and alleges a breach of that duty by allowing the images to be created and posted as advertisements without consideration for the rights associated with the images. (Doc. 28, para. 60) Under the 12(b)(6) standard, these allegations must be taken as true. The allegations in the First Amended Complaint point to the continued failure to act as separate acts of negligence. (Doc. 28, para. 190-198). Applying the F.R.C.P. 12(b)(6) standard, Plaintiffs have asserted sufficient facts to preclude dismissal of heir respondeat superior/negligence claims at this early stage in the case.

14. To win a false advertising claim under the Lanham Act, a plaintiff generally must establish among other things that the defendant's commercial advertising contained a false or misleading representation of fact that was likely to cause confusion about the defendant's products or services and that injured the plaintiff. 15 U.S.C. § 1125(a); *Sally Beauty Co. v. Beautyco, Inc.*,

304 F.3d 964, 980 (10th Cir. 2002). The Tenth Circuit has defined two distinct bases of liability under 15 U.S.C. § 1125(a)(1): (1) false representation in advertising concerning the quality of goods (false advertising claims); and (2) false representation concerning endorsement of goods (false association or endorsement claims). *See Amazon Inc. v. Cannondale Inc.*, 2000 WL 1800639, at *7 (D. Colo. Jul. 24, 2000) (citing *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995)). For a false advertising claim, Plaintiffs must establish that:

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002).

15. By contrast, a false association claim may be established if a defendant's conduct can be shown to create a likelihood of confusion as to, *inter alia*, whether the plaintiff is associated, connected, or affiliated with defendant, or sponsors, promotes or endorses defendant's services or product. *Amazon Inc.* at *7; 15 U.S.C. § 1125(a)(1)(A).

16. The common element to these two claims is the likelihood of consumer confusion. *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999). The Tenth Circuit has identified six factors related to the potential for likelihood of confusion, which include:

> (a) the degree of similarity between the marks;
> (b) the intent of the alleged infringer in adopting its mark;
> (c) evidence of actual confusion;
> (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
> (e) the degree of care likely to be exercised by purchasers; and
> (f) the strength or weakness of the marks. *Id.* at 1089-90.

17. These factors are non-exclusive and should not be applied mechanically, and some factors may carry more weight than others. *Id.* at 1090; *see also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1239-40 (10th Cir. 2013).

**1. THE DEGREE OF SIMILARITY BETWEEN THE MARKS**

18. With respect to this factor, Plaintiffs allege that their actual images were used by the clubs in their advertisements. (Doc. 28, para. 67, 79, 90, 101, 111, 121, 132; *see First Amended Complaint*, Ex. A-D). Thus, the similarity of the marks could not be higher, and this factor could no more strongly favor Plaintiffs as each image is actually an image of Plaintiff. It clearly appears from these ads attached to the First Amended Complaint that Plaintiffs are promoting the clubs. (Doc. 28, Ex. A-D). Alternatively, and at minimum, the Plaintiffs allege that the advertisements make it appear that each Plaintiff is consenting to the association with the strip club to appear in advertisements. (Doc. 28, para. 50, 146, 177).

**2. THE INTENT OF THE ALLEGED INFRINGER IN ADOPTING ITS MARK**

19. It is alleged that Defendants posted the images to their social media platforms for the purpose of advertising the club. (*see, e.g.,* Doc 28, para. 3).

20. It is also alleged that Defendants knew that that no Plaintiff worked at the clubs or had been hired to promote them. (*Id.* at 6-8, 10). Thus, this *King of the Mountain Sports, Inc. v. Chrysler Corp.* factor has been adequately plead by Plaintiffs. Moreover, Defendants cannot simply post advertisements containing professional models' images advertising their clubs and then seek dismissal by broadly claiming Plaintiffs cannot establish a Lanham Act claim in their Complaint. Adopting this type of "get out of jail free" approach would eviscerate the purpose of the Lanham Act.

**D. EVIDENCE OF ACTUAL CONFUSION**

21. With respect to evidence of actual confusion, Plaintiffs plead that the use of their images to promote the clubs creates the appearance that they either endorse the clubs or that they work at the clubs. (Doc. 28, para. 10, 50, 68, 79, 90, 101, 111, 121, 132). "Where a celebrity plaintiff asserts a false-endorsement claim, the 'mark' at issue is 'the celebrity's persona and the strength of the mark refers to the level of recognition the celebrity enjoys.' *Amazon Inc.*, 2000 WL 1800639, at *7 (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812, n.1 (9th Cir. 1997)). While the *Amazon, Inc*. case addresses a celebrity Plaintiff, there is *no requirement under the Lanham Act that a person qualify as a celebrity* in order to bring the claim.

22. For Defendants to now seek dismissal by claiming that, though Plaintiffs' images were important enough to use in their advertisements to attract clientele, they were not "famous enough" to meet some undefined level of "celebrity," makes no sense and is supported by no authority. Plaintiffs' pleadings clearly allege that they are "well-known" and have established themselves as recognizable in their industry. (Doc. 28, para. 39-42, 66, 78, 89, 100, 110, 120, 131).

**E. THE RELATION IN USE AND THE MANNER OF MARKETING BETWEEN THE GOODS OR SERVICES MARKETED BY THE COMPETING PARTIES**

23. It is alleged that none of the Plaintiffs have ever worked for Defendants' clubs. (Doc. 28, para. 54-56, 166, 177). In spite of this, it is clear that Defendants used Plaintiffs' images for club events and featured them in connection with the clubs' logos to suggest they approved the advertisements prove at *a minimum* a likelihood of confusion as to Plaintiffs' endorsement, association, or affiliation with the clubs (Doc. 28-1, Ex. A-D). Plaintiffs' pleadings clearly meet the pleading standard and denial of Defendant's motion is proper.

**F. THE DEGREE OF CARE LIKELY TO BE EXERCISED BY PURCHASERS**

24. The Lanham Act is a strict liability statute. Plaintiffs plead—and it apparent on its face—that Defendants are in the business of offering to consumers a night club experience and they advertise to the public. (Doc. 28, para. 31- 34). This factor, like all others, has been adequately plead by Plaintiffs and cuts against a finding dismissal in Defendant's favor.

**G. THE STRENGTH OR WEAKNESS OF THE MARKS**

25. To show "proof of a valid trademark[,] a plaintiff need not have a registered mark." *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010). "[T]he use of another's unregistered, *i.e.*, common law, trademark can constitute a violation of [the Lanham Act] where the *alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source.*" *Id.* (emphasis added.) And, "the general principles qualifying a mark for registration under the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). Marks that are "sufficiently 'distinctive,' are eligible for federal registration or protection as common law marks." *Id*. at 773. A mark is distinctive and eligible for protection if "it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id*. at 769. The Seventh Circuit recognizes five categories of distinctiveness to determine if a mark is eligible for protection as a common law mark (in ascending order): generic, descriptive, suggestive, arbitrary, and fanciful. *See Id.* at 768; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9-11 (2d Cir. 1976).

26. The allegations of the First Amended Complaint allege advertisements made or produced by Defendants show images of Plaintiffs acting, posing, or behaving in a manner

consistent with the text of the advertisement. (*See, e.g.*, Doc. 28, para. 67; *see also*, Doc.28, Ex. A-D). Plaintiffs aver that these images have confused consumers to believe that the Plaintiff models were in fact associated with Defendants. *Id.* at para. 165.

27. Following the pleading requirements for the Tenth Circuit, the requirements for alleging a claim for false endorsement under the Lanham Act have been met. As stated throughout the First Amended Complaint, Plaintiffs' images (in this case their actual identities) are, by definition, inherently distinctive or, by virtue of the Plaintiffs using their images (identities) to build a brand around themselves, have acquired a distinctiveness through secondary meaning. (Doc. 28, para. 39-42, 66, 78, 89, 100, 110, 120, 131). In other words, Plaintiffs allege that each Plaintiff's brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, *i.e.*, her persona.

**H. Plaintiffs are entitled to damages.**

28. For Plaintiffs to recover any other damages, they must show that they have been damaged by actual consumer confusion or deception resulting from Defendant's conduct. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987). Moreover, the Lanham Act's remedial provision says that when a plaintiff proves false advertising or trademark infringement, (s)he is "entitled, . . . subject to the principles of equity, to recover . . . defendant's profits." 15 U.S.C. § 1117(a). The statute goes on: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* A bald assertion that Defendants did not profit from its use of Plaintiffs' images is not enough to get it off the hook. Moreover, profit damages are not the only damages available to Plaintiffs. Plaintiffs are also entitled to, *inter alia*, the fair market value of Defendants' use of

their image and likeness. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987); 15 U.S.C. § 1117(a).

29. It is alleged that Plaintiffs were not paid for the underlying images taken, doctored, and posted by Defendants to market their clubs. (Doc. 28, para. 10; p. 8, Sec. B., para. 50, 63, 180, 187). Each Plaintiff has adequately plead her false association claim under 15 U.S.C. 1125(a)(1)(A).

30. Additionally, in a case involving the theft of intellectual property, the owner of the property almost always has already benefitted commercially from the marketing or licensing of that property, which is why the crux of the claim against the intellectual property thief is not that they received a benefit to the exclusion of all others, but rather that they received a benefit for which they did not pay. *See, e.g., Management and Engineering Technologies Intern., Inc. v. Information Sys. Support, Inc.*, 490 Fed. Appx. 30, 33(9th Cir. 2012). It is alleged in the First Amended Complaint that that no Plaintiff consented to or was paid for Defendants' use of her intellectual property. (*Id.* at para. 6, 9, 10, 57, 68, 70, 79, 81, 92, 101, 103, 111, 113, 122, 124, 133, 135, 156, 174, 197).

## III.
## CONCLUSION

31. In conclusion, under a 12(b)(6) standard of review, Plaintiffs have met their pleading burden and dismissal of these claims is not proper. Defendants' assertions of what Plaintiffs must "prove" are misplaced. Plaintiffs' allegations clearly state facts supporting all of the elements of their Lanham Act claims and their state claims. Plaintiffs' First Amended Complaint contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It articulates (1) "a short and plain statement of the grounds

for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). Under Rule 12(b)(6), all factual allegations from the First Amended Complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Under this standard, All Defendants' motions to dismiss must be denied.

Dated: November 8, 2021

**THE CASAS LAW FIRM, P.C.**

By: */s/Dennis C. Postiglione*
Dennis C. Postiglione
State Bar No.: 24041711
Joseph N. Casas
California Bar No.: 225800
The Casas Law Firm, P.C.
3801 N. Capital of Texas Hwy,
Ste. E240, #445
Austin, Texas 78746
dennis@talentrights.law

**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Joseph A. O'Keefe, Esq.
Justin T. Bailey, Esq.
**SANDERS LAW FIRM**
31 N. Tejon Street, Ste. 400
Colorado Springs, CO 80903
Tel: (719) 630-1556
Fax: (719) 630-7004
E-mail: Joe@psokventurellc.com
E-mail: justin@perrysanderslaw.com
*Attorneys for BPB, LLC and GLDT, LLC d/b/a Gasoline Alley*

**KUTAK ROCK LLP**
Lisa M. Saccomano
1801 California St., Suite 3000
Denver, CO 80202
Tel: 303-297-2400
E-mail: lisa.saccomano@kutakrock.com
*Attorney for BPB, LLC*

Maggie Ebert
Todd C. Kinney
1650 Farnam Street
The Omaha Building
Omaha, NE 68102
Tel: 402-346-6000
E-mail: maggie.ebert@kutakrock.com
E-mail: todd.kinney@kutakrock.com
*Attorneys for BPB, LLC and WSB, LLC d/b/a Blondies*

*/s/Dennis C. Postiglione*

Dennis C. Postiglione